1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Student Doe 1,

                              Plaintiff,

        v.

Kristi Noem et. al.,

                              Defendant.

CASE NO. 2:25-cv-00663

ORDER ON MOTION FOR
TEMPORARY RESTRAINING
ORDER (DKT. NO. 2)

# I        INTRODUCTION

On September 15, 2022, Plaintiff Doe[1]—who is an Indian national—was admitted to the

United States on an F-1 visa to attend the University of Washington ("UW").  (Dkt. No. 2-1 at

1.)  After earning his master's degree, Plaintiff transitioned to participation in Optional Practical

Training ("OPT") at UW.  (*Id.*)  *See* 8 C.F.R. § 214.2(f)(10).  Plaintiff has participated in the

---

[1] Plaintiff has filed a motion for a protective order and seeks to proceed pseudonymously.  (Dkt. No. 11.)  By referring to Plaintiff as Doe at this stage, the Court expresses no view on that motion.  During a TRO hearing held on April 24, 2025, the Parties confirmed that Defendants are aware of Does' identity and that Plaintiffs have disclosed that information to them, and as such, referring to them as Does in the TRO order would not be an obstacle to compliance.

1   OPT program since September of 2024.  (Dkt. No. 2-1 at 1.)  Plaintiff claims that "[t]hroughout

2   the time he has been at the UW, he has never violated his status, and has always been in

3   compliance with the conditions of his Form I-20."  (Dkt. No. 1 at 11.)

4       On April 7, 2025, Plaintiff received an email from a United States Embassy in India

5   stating that his "student visa was revoked."  (Dkt. No. 2-1 at 1.)  Shortly thereafter, UW

6   informed Plaintiff his record within the Student and Exchange Visitor Information System

7   ("SEVIS") maintained by Immigration and Customs Enforcement ("ICE") had been terminated

8   and was no longer in an active status.  (*Id.*)  Initially, the basis for termination was listed as

9   "individual identified in criminal records check and/or has had their visa revoked," but after "a

10  few days," the basis listed in the SEVIS system changed to "other."  (*Id.*)

11      Plaintiff brings claims under the Administrative Procedures Act ("APA") and the Fifth

12  Amendment against the Secretary of Homeland Security and the Department, and the ICE Acting

13  Director (collectively, "Defendants").  (Dkt. No. 1 at 5–6, 13–16).  Plaintiff moves for a

14  Temporary Restraining Order ("TRO") enjoining Defendants from "terminating his F-1 student

15  status under the SEVIS system" and requiring Defendants to set aside the "termination

16  determination."  (Dkt. No. 2 at 10.)  Because Plaintiff is likely to succeed in his argument that

17  Defendants' actions were arbitrary and capricious, and not in accordance with law, the Court will

18  grant the TRO.  *See* 5 U.S.C. § 706(2)(A).

19      This case is related to several other F-1 visa termination cases in this district, including

20  the first-filed case *Doe v. Noem*, No. 2:25-cv-00633-DGE, in which this court granted a TRO.  --

21  - F.Supp.3d ---, 2025 WL 1141279 (W.D. Wash. April 17, 2025.)  This order applies

22  substantially and builds on the same reasoning as the original *Doe* case.

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## II    BACKGROUND

### A.  The F-1 Visa Program and SEVIS

Pursuant to the Immigration and Nationality Act ("INA"), a foreign student may enter the United States in a nonimmigrant status to complete a course of study at an approved educational institution.  8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f).  If approved, the State Department will issue a visa allowing the student admission to the United States to pursue their course of study.  *See* 22 C.F.R. § 41.61(b)(1).  If admitted, DHS may administratively designate the student as an F-1 nonimmigrant classification.  8 C.F.R. § 214.1(a)(2).  A key component to admission as an F-1 nonimmigrant student is the presentment of Form I-20, which is "issued in the student's name by a school certified by the Student and Exchange Visitor Program (SEVP) for attendance by F-1 foreign students."  8 C.F.R. § 214.2(f)(1)(i)(A).  The F-1 student's Form I-20 is endorsed at the time of entry into the United States and the F-1 student is responsible for "retain[ing] for safekeeping the initial form I-20 or successor form bearing the admission number and any subsequent form I-20 issued to them."  8 C.F.R. § 214.2(f)(1)(ii), (f) (2).

An F-1 student may remain in the United States for the duration of their studies so long as they continue to meet the requirements outlined in the regulations.  8 C.F.R. § 214.2(f)(5)(i) ("Duration of status is defined as the time during which an F–1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students").  If a student "fails to maintain a full course of study without the approval of a [Designated School Official ("DSO")] or otherwise fails to maintain status," they must depart the United States immediately or seek reinstatement.[2]  8 C.F.R. § 214.2(f)(5)(iv); *see also* 8 U.S.C. § 1184(a)(1).

---

[2] A student may seek reinstatement by submitting an I-539, Application to Extend/Change Nonimmigrant status to United States Citizenship & Immigration Service ("USCIS") and a Form

1    Work authorization for F-1 students is governed by 8 C.F.R. § 274.12(b)(6).  The

2    regulation specifies certain classes of noncitizens who are "authorized for employment with a

3    specific employer incident to status or parole" and may work subject to any conditions of their

4    nonimmigrant classification, without additional documentation from DHS.[3]  Pursuant to the

5    regulations, F-1 students may participate in two types of practical training programs: Curricular

6    Practical Training ("CPT") and OPT, which involves post-graduate practical training in the

7    student's major area of study.  *See* 8 C.F.R. § 214.2(f)(10).  In order to participate in OPT, a

8    student must first gain approval from their Designated School Official ("DSO"), who is

9    responsible for providing the student with a signed Form I-20.  8 C.F.R §§ 214.2(f)(11)(i).  The

10   student must then apply to USCIS for authorization for OPT employment; a student may not

11   begin the OPT program until the date indicated on the Employment Authorization Document

12   (Form I-766) the student receives from USCIS.  8 C.F.R. § 214.2(f)(11)(i)(D).  A student has 14

13   months to complete the OPT program, unless they receive a 24-month extension for a science,

14   _____

15   I-20 or a successor form indicating a DSO's recommendation for reinstatement.  8 C.F.R.
     § 214.2(f)(16)(i).  Pursuant to the regulations, a district director "may consider" reinstatement if:

16   (1) student has not been out of status for more than five months at the time of filing or the failure
     to seek reinstatement within five months was due to exceptional circumstances; (2) student

17   "[d]oes not have a record of repeated or willful violations of DHS regulations; (3) student is
     pursuing or intending to pursue a full course of study at the school that issued the Form I-20 or

18   successor form; (4) student has not engaged in unauthorized unemployment; (5) student is not
     deportable pursuant to § 237 of the INA; and (6) USCIS is satisfied the violation of status was

19   beyond the student's control, or the "violation relates to a reduction in the student's course load
     that would have been within a DSO's power to authorize, and that failure to approve

20   reinstatement would result in extreme hardship to the student."  8 C.F.R.§ 214.2(f)(16)(i)(A)–(F).
     USCIS's decision to deny reinstatement is unreviewable.  *See* 8 C.F.R. § 214.2(f)(16)(ii).

21   [3] That includes "[a] nonimmigrant (F–1) student who is in valid nonimmigrant student status and
     pursuant to 8 C.F.R. 214.2(f)" is seeking (i) on campus employment, part time during the

22   academic year or full time when school is not in session, (iii) CPT programs as authorized by the
     DSO and I-20, (iv) OPT employment as designated on a form I-766, and (v) a student who is

23   seeking H-1B status and whose F-1 status has been extended in the interim.  *See* 8 C.F.R. §§
     212.2(h); 214.2(f)(5)(vi).  In other words, a student who is maintaining status under 8 C.F.R. §

24   214.2(f) is eligible for employment consistent with the terms described in that section.

technology, engineering, or mathematics (STEM) degree. *See* 8 C.F.R. § 214.2(f)(10)(ii)(C).

Once an F-1 student has completed their course of study and any CPT or OPT, they have sixty

days to depart the United States. 8 C.F.R. § 214.2(f)(5)(iv).

The F-1 visa system, which is administered by ICE through its Student and Exchange

Visitor Program (SEVP), governs a nonimmigrant student's legal status. *Jie Fang v. Dir. U.S.

Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019). In turn, SEVIS is an SEVP-

managed internet system that tracks and maintains information on nonimmigrant students. *See* 8

C.F.R. § 214.3(a)(l). To implement the F-1 visa program, SEVP certifies participating

educational institutions, allowing those institutions to issue a Form I-20 in the student's name in

SEVIS.[4] SEVP regulations also govern the termination of F-1 student status in SEVIS. 8 C.F.R.

§ 214.2(f). A student (or OPT/CPT participant) may fall out of F-1 status by: (1) failing to meet

the regulatory requirements for F-1 student status or (2) via an agency related termination of

status. 8 C.F.R. §§ 214.1(d), 214.2(f)(5)(iv).[5] DHS can terminate an F-1 student's status in three

ways: 1) by revoking a previously authorized waiver under 8 U.S.C. § 1182(d)(3) or

§1182(d)(4); 2) through the introduction of a private bill in Congress to confer permanent

resident status; or 3) if DHS publishes a notification in the Federal Register, on the basis of

national security, diplomatic, or public safety reasons. 8 C.F.R. § 214.1(d). DHS's ability to

terminate an F-1 student's status is limited to the three ways enumerated in § 214.1(d). *See Jie

Fang*, 935 F.3d at 185 n.100.

**B. Termination of Plaintiff's SEVIS Record**

---

[4] *Study in the States*, Dep't of Homeland Sec. (last accessed Apr. 16, 2025), https://studyinthestates.dhs.gov/site/about-sevis; 8 C.F.R. § 214.2(f)(1)(i)–(iii).

[5] The regulations detail circumstances under which the visa holder may be considered to fail to maintain status, including unauthorized employment, willful failure to provide truthful information to DHS, or certain qualifying criminal convictions. 8 C.F.R § 214.1(e)–(g).

1    In September of 2022, Plaintiff was admitted to the United States on an F-1 visa to study

2  at UW. (Dkt. No. 2-1 at 1.)  After graduating with a master's degree in electrical engineering, he

3  applied for the OPT program. (*Id.*)  He was accepted, and the UW's DSO issued an I-20 for him

4  to present to USCIS. (*Id.*; Dkt. No. 2 at 2.)  USCIS then issued Plaintiff a work permit, which

5  allowed him to begin the OPT program in September of 2024. (Dkt. No. 2-1 at 1.)  Plaintiff

6  declares that he has been "in full compliance" with the terms of his OPT status since that time.

7  (*Id.*)  Plaintiff works as an AI researcher in the computer science department at UW. (*Id.*)

8    On April 7, 2025, Plaintiff received a letter from the United States embassy in India

9  stating that his student visa had been terminated. (*Id.*)  Plaintiff then received an email from

10  International Student Services at UW stating that his SEVIS status had been terminated. (*Id.*)

11  Initially, the basis listed for the termination in the SEVIS system was: "Otherwise failing to

12  maintain status - individual identified in criminal records check and/or has had their visa

13  revoked." (*Id.*)  However, after "a few days," the explanation in the SEVIS system changed to

14  "other." (*Id.*)  Plaintiff has not received any notice or contact from Defendants directly

15  regarding his termination, nor any opportunity to contest the determination. (*Id.*)  Plaintiff

16  declares that "[a]part from a minor misdemeanor traffic matter, that did not involve alcohol and

17  did not cause any injury to anyone, [he has] no other negative records here." (*Id.* at 2.)  At the

18  April 25, 2025 hearing, it was confirmed that the misdemeanor Plaintiff references was for

19  reckless driving. *See* Wash. Rev. Code § 46.61.500.  Plaintiff explains that his "SEVIS

20  termination has deeply affected [him] emotionally and financially"; he describes "feel[ing]

21  overwhelming guilt, grief, and anxiety for disappointing [his] parents, as the abrupt end to [his]

22  AI research has derailed [his] pursuit of a PhD." (*Id.* at 1.)  "The news of termination has caused

23  [him] great depression and hopelessness," he explains. (*Id.*)

24

Plaintiff alleges multiple causes of action under the APA: arbitrary and capricious agency action, action in excess of statutory and regulatory authority, action without observance of procedure required by law, and action that is contrary to constitutional right.  *See* 5 U.S.C. §§ 706(2)(A), 706(2)(C), 706(2)(D), 706(2)(B).  (Dkt. No. 1 at 12–16.)  He further alleges a Fifth Amendment Procedural Due Process violation.  (*Id.* at 13–14.)  Plaintiff seeks a TRO and subsequently a Preliminary Injunction (PI) that declares the termination of his SEVIS status unlawful, vacates the termination of the SEVIS status, and orders Defendants to immediately restore his SEVIS record and status.  (*Id.* at 16.)

### III    LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO.  "The legal standard for a TRO is substantially identical to the standard for a preliminary injunction." *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020).  To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Generally, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.  The moving party has the burden of persuasion.  *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418 (2009).

The Ninth Circuit has also articulated an alternative "sliding scale" approach pursuant to which the first and third *Winter* factors are analyzed on a continuum; under such standard, a

1    weaker showing on the merits, combined with a stronger demonstration on the balancing test,

2    might warrant preliminary injunctive relief, assuming the second and fourth *Winter* elements are

3    met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–1135 (9th Cir. 2011).

4    Under this "sliding scale" method, the movant need only raise "serious questions going to the

5    merits," but the balance of hardships must tip "sharply" in the movant's favor. *Id.* at 1131–1132;

6    *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

7                                **IV      JURISDICTION**

8           "Section 704 of the APA provides for judicial review of '[a]gency action made

9    reviewable by statute and final agency action for which there is no other adequate remedy in a

10   court.'" *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 952 (9th Cir. 2017)

11   (quoting 5 U.S.C. § 704).  As no statute authorizes judicial review over the termination of SEVIS

12   records, the singular issue here is whether Defendants' termination of Plaintiff's SEVIS record

13   was "final" agency action for which there was no other "adequate remedy." 5 U.S.C. § 704. *C.f.*

14   *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010).  For

15   agency action to be deemed final, it must "mark the consummation of the agency's decision-

16   making process" and "the action must be one by which rights or obligations have been

17   determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–

18   178 (1997) (internal quotation marks omitted).

19          As an initial matter, it is apparent that the termination of Plaintiff's SEVIS record is an

20   agency action that implicates "rights and obligations" and may well result in "legal

21   consequences." *Id.*; *see also Jie Fang*, 935 F.3d at 180.  Next, the action appears to constitute

22   the consummation of the agency's decimating process for two reasons.  First, "there is no

23   statutory or regulatory requirement that a student seek reinstatement" of student status in SEVIS,

24

and even if a student attempts to pursue the administrative procedure for SEVIS reinstatement, there is no "mechanism to review the propriety" of the original termination. *Jie Fang*, 935 F.3d at 182; *see* 8 C.F.R § 214.2(f)(16)(ii) ("The adjudicating officer will update SEVIS to reflect USCIS' decision. If USCIS does not reinstate the student, the student may not appeal the decision.").  Second, since neither immigration judges nor the BIA have the authority to review SEVIS termination or a USCIS denial of reinstatement, there is no proceeding in which a student can contest the agency action at issue here.  *Jie Fang*, 935 F.3d at 185.; *Ghorbani v. I.N.S.*, 686 F.2d 784, 791 (9th Cir.1982); *Tooloee v. I.N.S.*, 722 F.2d 1434, 1438–1439 (9th Cir. 1983). Thus, the termination of Plaintiff's F-1 student status in SEVIS was not "of a merely tentative or interlocutory nature," but rather a unilateral determination with immediate legal consequences over which Plaintiff has no ability to seek administrative review.  *Bennett*, 520 U.S. at 177–178. Accordingly, the Court finds it has jurisdiction to proceed.  *C.f. Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order.").

## V    ANALYSIS

### A.  Plaintiff is Likely to Succeed in the Argument that Termination of His SEVIS Record was Unlawful

Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Here, based on the limited record before the Court, Plaintiff has demonstrated a likelihood of success on two independent grounds under § 706(2)(A): that

Defendants' termination of his SEVIS record was not in accordance with law, and that it was arbitrary and capricious.[6]

###### 1. Not In Accordance with Law

###### i. *Agencies Must Follow Their Own Regulations*

It is contrary to law for an agency to disregard its own regulations and policies. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *Wallace v. Christensen*, 802 F.2d 1539, 1552 n.8 (9th Cir. 1986) (an agency is "bound by its own regulations so long as they remain in force."). As the District of Columbia Circuit has explained:

> In a series of decisions, the Supreme Court has entertained challenges to agency actions that failed to conform to agency regulations. In *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943), the Court held that an agency is bound to the standards by which it professes its action to be judged. In *Accardi,* a case involving a habeas challenge to the denial of suspension of deportation, the Court objected to the agency's 'alleged failure to exercise its own discretion contrary to existing valid regulations.'

*Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 246 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, (1954)) (parallel citation omitted). Moreover, "'a court's duty to enforce an agency regulation, while most evident when compliance with the regulation is mandated by the Constitution or federal law,' embraces as well agency regulations that are not so required." *Id.* at 247 (alterations omitted) (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)).

The Ninth Circuit has affirmed that "[p]ursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures." *Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990); *see also United States v. Nixon*, 418 U.S. 683, 696 (1974)*; Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co.*, 284 U.S. 370,

---

[6] Because the Court finds that Plaintiff has established likelihood of success on his APA claim, the Court does not reach his Fifth Amendment Due Process claim at this time.

389 (1932). Courts have framed the obligation for an agency to follow its own regulations as

deriving from § 706(2)(A) or other APA provisions. *See, e.g., Suncor Energy (U.S.A.), Inc. v.*

*United States Env't Prot. Agency*, 50 F.4th 1339, 1352 (10th Cir. 2022) (holding that EPA action

violated § 706(2)(A) because it ignored the agency's regulatory definition of "facility"); *Kidd v.*

*Mayorkas*, 734 F. Supp. 3d 967, 983–984 (C.D. Cal. 2024) (ICE policy of warrantless "knock

and talk" violated agency's regulations and thus § 706(2)(A)). Agencies must also adhere to

internal procedures designed to provide protections to individuals. *Morton v. Ruiz*, 415 U.S. 199,

235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to

follow their own procedures."); *see also Lopez*, 318 F.3d at 247; *Beshir v. Holder*, 853 F.Supp.2d

1, 11 (D.D.C. 2011) (DHS Secretary's discretion to issue procedural rule pausing processing of

adjustment of status applications limited by regulation requiring adjudication in certain

timeframe).

Accordingly, Defendants are bound to follow their own rules and regulations governing

the proper termination of an F-1 student's record in SEVIS.

### ii. *Defendants Failed to Follow Their Own Regulations and Procedures*

As discussed *supra*, a student's record in the SEVIS system can be terminated either

because the student fails to maintain status, or when the agency initiates a termination of status.

8 C.F.R. §§ 214.1(d); 214.2(f). Plaintiff avers that he has remained in full compliance with his

F-1 and OPT status (Dkt. No. 2-1 at 1) and Defendants have introduced no evidence to the

contrary. Agency-initiated termination is governed by 8 C.F.R. § 214.1(d), which enumerates

circumstances that result in termination:

> Within the period of initial admission or extension of stay, the nonimmigrant status of an
> alien shall be terminated by the revocation of a waiver authorized on his or her behalf
> under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer

permanent resident status on such alien; or, pursuant to notification in the Federal
Register, on the basis of national security, diplomatic, or public safety reasons.

Defendants do not argue that any of these criteria are present here.

Plaintiff's single misdemeanor traffic violation is not a qualifying offense that could
lawfully result in SEVIS termination. DHS's regulations specifically explain what criminal
activity results in failure to maintain status for a nonimmigrant:

A condition of a nonimmigrant's admission and continued stay in the United States is
obedience to all laws of United States jurisdictions which prohibit the commission of
crimes of violence and for which a sentence of more than one year imprisonment may be
imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime
of violence for which a sentence of more than one year imprisonment may be imposed
(regardless of whether such sentence is in fact imposed) constitutes a failure to maintain
status under section 241(a)(1)(C)(i) of the Act.

8 C.F.R. § 214.1(g). In Washington, a misdemeanor traffic violation may be penalized with up
to 364 days in jail, or one day short of a year imprisonment. *See* Wash. Rev. Code § 46.61.502.
Additionally, a misdemeanor traffic charge—in this case, non-alcohol related reckless driving—
likely does not qualify as a crime of violence. *See Borden v. United States*, 593 U.S. 420, 427–
430 (2021) (a "crime of violence" is an offense that has as an element of use, attempted use, or
threatened use of physical force against another person or their property and excludes offenses
committed with a mens rea of negligence or recklessness.). To the extent that Defendants
terminated Plaintiff's SEVIS record merely because their name appeared in a criminal records
check, that is inconsistent with Defendants' own regulation, which renders the decision invalid
under § 706(2)(A). *See supra*.

Additionally, the revocation of Plaintiff's F-1 visa (Dkt. No. 1-2 at 1) does not provide
grounds for the SEVIS termination. Recall the distinctions between the F-1 visa and the record
in the SEVIS system. *See supra,* Section II(A). The former is necessary for admission to the
United States, while the latter indicates maintenance of lawful status. 8 C.F.R. §§ 214.2(f)(1);

214.2(f)(5).  Congress has granted the Secretary of State and consular officers broad discretion to revoke nonimmigrant visas, and such a determination can only be challenged in removal proceedings.  8 U.S.C. § 1201(i).  But the State Department's own internal policy directs consular officers that "[u]nder no circumstances should you revoke a visa when the individual is in the United States."  *See* 9 FAM 403.11-3(B). [7]  Since Plaintiff was already lawfully admitted to the United States, his admissibility should have no bearing on his continued lawful presence, and Defendants have identified no authority that permits them to terminate a SEVIS record on the basis of a visa revocation.  ICE's own internal policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."  *Policy Guidance 1004-01—Visa Revocations*. [8]  Likewise, State Department guidance confirms that after a nonimmigrant exchange student visa is revoked, "the visa is no longer valid for *future* travel to the United States" but only "*after* the individual's departure from the United States, sponsors should terminate his or her program status in SEVIS."  *Guidance Directive 2016-03 9 FAM 403.11-3 – Visa Revocation*. [9]  Thus, the revocation of Plaintiff's F-1 visa does not serve as a ground for the SEVIS termination.

Additionally, Defendants indicated at the April 25, 2025 hearing they are unable to state whether termination of the SEVIS record invalidates a student's nonimmigrant status. This position is inconsistent with the regulatory scheme.  First, the SEVIS system provides a school

---

[7] U.S. State Department, Foreign Affairs Manual (last updated Oct. 2, 2024) https://fam.state.gov/fam/09FAM/09FAM040311.html.

[8] *Policy Guidance 1004-01—Visa Revocations*, U.S. Immigration and Customs Enforcement, 3, (June 7, 2010) https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[9] *Guidance Directive 2016-03 9 FAM 403.11-3 – Visa Revocation*, U.S. Dep't of State Bureau of Educational and Cultural Affairs Private Sector Exchange, 1–2, (Sept. 2, 2016) https://j1visa.state.gov/wp-content/uploads/2019/05/2016-03_GD_Visa_Revocation_FINAL_Sept_2016.pdf.

the means to report a student's compliance with requirements for maintaining F-1 nonimmigrant status (as indicated on form I-20).  *See* 8 C.F.R. §§ 214.2(f)(1)(iii); 214.3.  If a SEVIS record is terminated, the school can no longer report the student's compliance; DHS advises that "[o]nce the student has been terminated you will not be able to take any action on this student or print the student's record without requesting reinstatement."[10]  Thus, the school and the student have no way of establishing the student remains in valid nonimmigrant status.  Second, the SEVIS record termination means "a student loses all on- and/or off-campus employment authorization."[11]  But cancellation of employment authorization can only mean that a student has failed to maintain status and therefore is no longer in nonimmigrant status.  *See* 8 C.F.R. § 214.2(f)(9)(ii)(A) ("The employment authorization is automatically terminated whenever the student fails to maintain status."); 8 C.F.R. § 274a.12(b)(6) (identifying that a nonimmigrant F-1 student who is in valid nonimmigrant status is authorized for employment).  Thus, it is inconsistent for the government to acknowledge it terminated Plaintiff's SEVIS record while failing to acknowledge it has terminated Plaintiff's lawful nonimmigrant status.  To the extent the Government admits to terminating the SEVIS records of students who have properly maintained their status, that would be a misuse of the system and contrary to the relevant regulations.

Finally, during the April 25 hearing, defense counsel invoked 8 U.S.C. § 1372 as providing authority for the termination of Plaintiff's SEVIS record.  That statute confers authority to *create* the SEVIS system but says nothing about termination of a student's record in

---

[10] U.S. Dep't Homeland Sec., *Study in the States: Complete Program* (July 17, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/complete-program

[11] U.S. Dep't Homeland Security, *SEVIS Help Hub: Terminate A Student* (Nov. 7, 2024.) https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

the system.  Contrastingly, 8 C.F.R. § 214.1(d) enumerates the sole grounds under which DHS

may initiate the termination of F-1 student's record in SEVIS.  *See Jie Fang*, 935 F.3d at 185

n.100.  When one section of a statutory scheme passes specifically upon the question at hand and

the other section is silent, Courts understand the specific to govern the general.  *See RadLAX*

*Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).  Here, 8 C.F.R.

§ 214.1(d) speaks specifically to when a SEVIS record may be terminated, 8 U.S.C. § 1372 does

not.[12]

       Thus, the termination of Plaintiff's SEVIS record appears inconsistent with agency

regulations, which renders the decision invalid.  *Nat'l Ass'n of Home Builders*, 340 F.3d at 852;

*Wallace*, 802 F.2d at 1552 n.8.  Because Defendants' termination of Plaintiff's SEVIS record

was—based on the limited information currently available—not authorized by and violated their

own regulations, Plaintiff is likely to succeed in establishing the agency action is not in

accordance with law under § 706(2)(A).

       2. <u>Arbitrary and Capricious for Lack of Explanation</u>

       Agency action is considered arbitrary and capricious if "the agency has relied on factors

which Congress has not intended it to consider, entirely failed to consider an important aspect of

the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*.,

463 U.S. 29, 43 (1983).  As the Ninth Circuit has explained, the "critical factor in *Motor Vehicle*

was that the agency 'submitted no reasons at all' for its decision."  *McFarland v. Kempthorne*,

---

[12] When asked during the hearing if there is a specific provision in 8 U.S.C. § 1372 that provides authority for the termination of a student's SEVIS record, Defendants were unable to provide one.

545 F.3d 1106, 1113 (9th Cir. 2008) (citing *Motor Vehicle*, 463 U.S. at 50). The *Motor Vehicle* standard has been applied to review individualized agency decisions as well as agency rules. *See, e.g.*, *Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849, 852 (9th Cir. 2021); *McNeely v. United States Dep't of Lab.*, 720 F. App'x 825, 827 (9th Cir. 2017).

In this instance, Defendants have failed to meet "the general administrative-law requirement that an agency 'articulate a satisfactory explanation for its action.'" *Hernandez v. Garland*, 52 F.4th 757, 768 (9th Cir. 2022) (quoting *State Farm*, 463 U.S. at 43). Indeed, Defendant has failed to suggest any lawful grounds as to why its action here is lawful under the APA. *Motor Vehicle*, 463 U.S. at 50. Defendants' submission that they "do not concede that Doe has demonstrated a likelihood of success on the merits on his APA claim" but cannot defend it because "Defendants have not completed [factfinding] efforts in time to respond to Doe's motion" is inadequate under governing law. (Dkt. No. 13 at 11.) *C.f. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 30 (2020).[13] The Court declines to "deny Doe's motion even in the absence of this factual information related to the APA claim." (Dkt. No. 13 at 11.) Indeed, Defendants' failure to provide a single plausibly lawful explanation for its action—an explanation reasonably grounded somewhere in the statutory scheme—is the exact circumstance contemplated by the arbitrary and capricious standard. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (en banc) ("[*Motor Vehicle*] teaches that even when reversing a policy after an election, an agency may not simply [change courses] without a reasoned explanation.").

---

[13] An agency need not consider every conceivable alternative, but when it is "not writing on a blank slate" it must consider the impact of its actions on vested reliance interests, especially in the immigration context, where individuals make "time-bounded commitment[s], to allow them to, say, graduate from their course of study." *Regents*, 591 U.S. at 32–33.

Accordingly, Plaintiff is also likely to prevail on the claim that the agency action is arbitrary and capricious for failing to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle*, 463 U.S. at 43.

**B. Remaining TRO Factors**

1. <u>Irreparable Harm</u>

Plaintiff faces several forms of irreparable harm as the result of the termination of his SEVIS record. While Defendants have not yet placed Plaintiff in removal proceedings, he faces the prospect of detention, removal proceedings, and ultimately removal because termination of his SEVIS record indicates that he is not maintaining status in his program. *See* 8 U.S.C. §§ 1227(a)(1)(B); 1227(a)(1)(C)(i). Plaintiff's fears are not speculative, as DHS's own public-facing guidance states that a person whose SEVIS record is terminated faces the following consequences:

- Student loses all on- and/or off-campus employment authorization.
- Student cannot re-enter the United States on the terminated SEVIS record.
- Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.
- Any associated F-2 or M-2 dependent records are terminated.[14]

Thus, termination of a student's record in SEVIS results in the loss of on campus employment authorization, meaning that Plaintiff is unable to continue his OPT research work. And importantly, termination provides ICE agents a basis to investigate a student's departure, which

---

[14] *See* Dep't Homeland Security, *SEVIS Help Hub: Terminate A Student* (Nov. 7, 2024.) https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

could only mean the student no longer maintains lawful status in the United States otherwise

why the need to confirm their departure.  What is more, Plaintiff asserts they are suffering

extreme emotional stress and reports feeling "overwhelming guilt, grief, and anxiety," as well as

"great depression and hopelessness."  (Dkt. No. 2-1 at 2.)

    Turning now to examine the irreparable harm in more detail, the Court begins by

considering the interaction between the threat of removal and the loss of Plaintiff's OPT

employment authorization.  Removal is not by itself an irreparable harm, in part because removal

is (in at least some instances) reversible.  *See Nken*, 556 U.S. at 430.  However, in this case, the

ordinary harms of removal would compound the other harms Plaintiff faces by effectively

eliminating his ability to complete his OPT program, placing his career trajectory in jeopardy.  A

strikingly similar case involved an Indian national who had been working through the OPT

program at a United States university.  The district court found that, "[i]f the plaintiff cannot

work or study, he cannot remain in the United States legally, and he will therefore either be

subjected to removal proceedings or forced to return to India on his own, which would require

him to pursue anew the entire process for lawful readmission to the United States if he wishes to

complete his [OPT] training." *Hinge v. Lyons*, No. CV 25-1097 (RBW), 2025 WL 1134966, *5

(D.D.C. Apr. 15, 2025).  Here, Plaintiff's inability to finish his research project due to the SEVIS

record termination—and resultant inability to publish his findings and/or apply to doctorate

programs on time—is not something that Plaintiff can get back.  As another court put it: "The

loss of timely academic progress, whether such progress is accomplished in preparing a

dissertation or gaining practical work experience, is simply not compensable by money

damages." *B K v. Noem*, No. 1:25-CV-419, 2025 WL 1171572 (W.D. Mich. Apr. 23, 2025).

Although Plaintiff could perhaps hypothetically transfer his work to a research lab in his home

country and not apply to PhD programs in the United States as planned, "Plaintiffs are not required to eliminate all alternative career paths in order to meet their burden under this factor." *Id.*

Further, Plaintiff describes severe psychological distress. (Dkt. No. 2-1 at 1) ("I feel overwhelming guilt, grief . . . anxiety . . . . great depression and hopelessness."). The Ninth Circuit has found that emotional distress, depression, and anxiety constitute irreparable harm under certain circumstances. *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 709–710 (9th Cir. 1988). In *Chalk*, the plaintiff was a teacher of hearing-impaired children. After he developed AIDS, the school board removed him from the classroom and assigned him to administrative tasks despite his presentation of evidence that his presence in the classroom posed no danger to the students. *Id.* at 703. The Ninth Circuit granted a preliminary injunction, finding that the Plaintiff's "injury [was] emotional and psychological—and immediate. Such an injury cannot be adequately compensated for by a monetary award after trial." *Id.* at 710.

While "the emotional distress normally suffered upon the loss of a job will not support the issuance of preliminary relief," the emotional and psychological distress triggered by the loss of one's OPT research position, living circumstance, and future employment and degree prospects can be both unusual and extreme. *Remlinger v. State of Nev.*, 896 F. Supp. 1012, 1017 (D. Nev. 1995). Moreover, as other courts have commented, the fear of removal is significant— and not ill-founded—in these cases. *See Madan*, 2025 WL 1171572, citing *Ozturk v. Trump*, No. 25-CV-10695-DJC, 2025 WL 1009445, at *1 (D. Mass. Apr. 4, 2025) ("[W]ithout prior notice of the revocation of her student visa or the grounds asserted for same, Ozturk, a graduate student in Child Study and Human Development at Tufts University, was approached and surrounded by

six officers (several wearing masks and/or hoods), stripped of her cellphone and backpack, handcuffed, and taken into custody in an unmarked vehicle.").  (*See* Dkt. No. 2-1 at 2) ("I am also afraid of repercussions because I am challenging the government's action here . . . I have seen many stories about non-citizens in the US facing unlawful detentions and deportations[.]").  Accordingly, this case bears a stronger similarity to instances where courts have found that emotional harm constitutes irreparable harm than to "run of the mill" job loss cases.  *See, e.g., EEOC v. Chrysler Corp.*, 546 F. Supp. 54, 70 (E.D. Mich. 1982) aff'd, 733 F.2d 1183 (6th Cir.1984); *Shapiro v. Cadman Towers, Inc.*, 844 F. Supp. 116, 122 (E.D.N.Y. 1994); *Caspar v. Snyder,* 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015); *United States v. Matusoff Rental Co.*, 494 F.Supp.2d 740, 756 (S.D. Ohio 2007).  Thus, the Court concludes that extreme psychological distress caused by the termination of Plaintiff's student status may well represent an irreparable injury for which "there can be no do over and no redress." *Nat'l Council of Nonprofits*, ___ F. Supp. 3d ___, ___, 2025 WL 368852, at *13 (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016)).  When taken in combination, the harm threatened to Plaintiff is substantial: loss of employment authorization and ability to participate in his OPT program, loss of job prospects, life under the threat of immediate removal, and extreme psychological distress.

      2.   <u>There is a Public Interest in Enforcement of Valid Regulations, and Balance of Equities Favor Plaintiff</u>

"When the government is a party, the balance of equities and the public interest factors merge." *Nken*, 556 U.S. at 435.  The public has a vested interest in a federal government that follows its own regulations.  As one court framed it: "the public has a strong interest in having a [government] that conducts itself fairly and according to its stated regulations and policies." *Cooney v. Dalton*, 877 F. Supp. 508, 515 (D. Haw. 1995); *see also Eight N. Indian Pueblos*

*Council, Inc. v. Kempthorne*, No. CV 06-745 WJ/ACT, 2006 WL 8443876, \*5 (D.N.M. Sept. 15, 2006) ("It is in the public interest that federal agencies comply with their own policies and with federal statutes.").  Here, Defendants assert that the public interest factors tip in their favor because the "public interest lies in the Executive's ability to enforce U.S. immigration laws." (Dkt. No. 13 at 11.)  However, Defendants have provided *no indication* that they complied with the relevant statutory scheme in enforcing immigration laws in this case.  Accordingly, this is a set of circumstances where the government and its decision-making processes will be best served by judicial review of a decision—and maintenance of the status quo during that review—that appears both unlawful and likely to cause Plaintiff irreparable harm.  Moreover, Defendants have not put forth evidence of how a TRO would cause them injury or harm.  For these reasons, the Court determines that the balance of the equities and public interest factors tip sharply in Plaintiff's favor.

Finally, the Court addresses Defendant's argument that Plaintiff is "not only seeking to preserve the status quo on a temporary basis" but is rather requesting "an order compelling the defendants to change the status quo" because "he seeks emergency restoration of a record that has already been marked as terminated." (Dkt. No. 13 at 7–8.)  Courts have long held that the "status quo ante litem" for the purposes of considering a temporary restraining order or preliminary injunction "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'"  *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963).  An interpretation of "status quo as the moment before filing a lawsuit but after alleged misconduct began "would lead to absurd situations, in which plaintiffs could never bring suit once infringing conduct had begun."  *Id*.

1    This standard has been applied to government action as well as private disputes.  *See,*

2    *e.g., Doe #1 v. Trump*, 957 F.3d 1050, 1068–1069 (9th Cir. 2020); *S.A. v. Trump*, No. 18-CV-

3    03539-LB, 2019 WL 990680, *13 (N.D. Cal. Mar. 1, 2019).  For example, in *S.A.*, the court

4    concluded that the status quo ante litem was the point before DHS stopped processing

5    conditionally approved beneficiaries under a dual refugee/parole program.  *See S.A.,* 2019 WL

6    990680, at *13.  Accordingly, the court vacated DHS's decision to mass-rescind conditional

7    approvals for 2,714 beneficiaries pending a final determination on the merits because that

8    maintained the status quo ante litem.  *Id*. at *17.  Similarly, in this case, the "legally relevant

9    relationship between the parties before the controversy arose," describes the state of affairs *prior*

10   to the termination of Plaintiff's SEVIS record.  *Ariz. Dream Act Coalition v. Brewer*, 757 F. 3d

11   1053, 1060–1061 (9th Cir. 2014).  Accordingly, Defendant's argument that "the relief Doe #1

12   seeks is not a prohibitory injunction to maintain the status quo" is frustrated by decades of Ninth

13   Circuit caselaw.  (Dkt. No. 13 at 2.)

14       Finally, Defendant advances a confused argument that posits Plaintiff seeks "a final

15   judgement on the merits" because a TRO is part of the final relief outlined in his complaint.  (*Id*.)

16   Defendants are correct that "it is generally inappropriate for a federal court at the preliminary-

17   injunction stage to give a final judgment on the merits."  *University of Texas v. Camenisch*, 451

18   U.S. 390, 395 (1981).  But what the *Camenisch* court was communicating was that findings of

19   fact and conclusions of law made by a court in a preliminary injunction or TRO posture are

20   preliminary and do not bind the court at the trial on the merits.  *Id*. at 395–398.  Thus, it is not

21   appropriate to enter a *final judgement* at a TRO stage.  *Id*.  That is not what the Court is doing

22   here.  As the *S.A.* court emphasized, "nothing in *Camenisch* holds that the scope of a preliminary

23   injunction cannot overlap with the relief requested for an eventual final judgment." S.*A*, 2019

24

WL 990680, at *16 n.59.  Here, as in *S.A.*, the order makes no final findings on the merits and merely returns the parties to the status quo ante litem.

### C. The Court Will Not Require a Bond

Under Federal Rule of Civil Procedure 65(c), in granting a PI or TRO, the court must require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The Ninth Circuit has held that "[d]espite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (cleaned up).  "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen,* 320 F.3d at 919).  Here, Defendants request that the Court impose a bond "in an amount the Court determines to be appropriate." (Dkt. No. 13 at 11.) Defendants do not account for any costs they allege they will face if the TRO is issued erroneously, and the Court perceives none.  Here, Defendants will face no cost from Plaintiff continuing his studies as he did before his SEVIS was terminated, and negligible or zero cost from restoring his SEVIS status to active.  Plaintiff's only criminal history is a misdemeanor, and he poses little if any risk to the public.  The Court therefore exercises its discretion to waive the bond requirement.

## VI    CONCLUSION

Accordingly, it is ORDERED that Plaintiff's Motion for a Temporary Restraining Order (Dkt. No. 2) is GRANTED.  Defendants are ENJOINED for a period of fourteen days from the date of this order, as follows:

1         1)   Defendants shall restore Plaintiff's F-1 student record and I-20 in the Student and

2               Exchange Visitor Information System (SEVIS);

3         2)   Defendants shall set aside the April 7, 2025 F-1 student record and I-20

4               termination as to Plaintiff;

5         3)   Defendants shall not terminate Plaintiff's student record and I-20 in SEVIS

6               absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f).

7         4)   Defendants are prohibited from detaining or transferring Plaintiff out of this

8               Court's jurisdiction, or ordering the detention or transfer of Plaintiff out of this

9               Court's jurisdiction, as a result of the termination of his F-1 student record or I-

10            20 in SEVIS on April 7, 2025; and

11       5)   Defendants are prohibited from initiating removal proceedings against or

12            deporting Plaintiff on the basis of the April 7, 2025 termination of his F-1 student

13            record or I-20 in SEVIS.

14  It is furthered ORDERED that the security requirement of Rule 65(c) is waived.

15       Dated this this 25th day of April, 2025.



David G. Estudillo
United States District Judge